# In the United States Court of Federal Claims

|  |  |
|---|---|
| PATRICIA STEWART-ROBINSON,<br><br>*Petitioner,*<br><br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>*Respondent.* | No. 22-477 V<br>(Filed: October 8, 2024) |

Renée J. Gentry, The Law Office of Renée J. Gentry, Washington, D.C., for petitioner.

Eleanor A. Hanson, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C., for respondent.

### OPINION AND ORDER
### Granting Ms. Stewart-Robinson's Motion for Review

**SILFEN,** *Judge.*

Patricia Stewart-Robinson filed a petition under the National Childhood Vaccine Injury Act of 1986 (Vaccine Act) seeking compensation for injuries that she alleges resulted from a flu vaccine: transverse myelitis and multiple sclerosis.[1] Relying on his prior experience and expertise, the special master held that Ms. Stewart-Robinson's earlier transverse myelitis diagnosis was only an initial presenting symptom of multiple sclerosis, not a separate illness, and that her medical records did not reflect a link between the flu vaccine and her multiple sclerosis diagnosis. He

---

[1] This opinion was originally issued under seal. The parties had no proposed redactions. The court reissues this opinion publicly.

dismissed the case based on those conclusions, without providing Ms. Stewart-Robinson with an opportunity to submit an expert report.

Ms. Stewart-Robinson seeks review of that dismissal, arguing that the special master abused his discretion and erred as a matter of law. Special masters may—and are expected to— rely on their experience and expertise when deciding Vaccine Act cases. But here the special master abused his discretion by relying exclusively on his prior experience to presume that any expert report would have no merit. That process denied Ms. Stewart-Robinson the chance to present her case. This court **grants** Ms. Stewart-Robinson's motion for review and **remands** the case to the special master to provide Ms. Stewart-Robinson with an opportunity to present her case.

## I.    Background

### A.    Ms. Stewart-Robinson's medical history

On September 25, 2019, Ms. Stewart-Robinson received a flu vaccine administered by her primary care physician, Dr. Linke Ma. ECF No. 1 at 1 [¶4]; ECF No. 7-3 at 2 (vaccination record). Approximately two weeks later, around October 10, Ms. Stewart-Robinson began to experience changes in sensation and numbness in her lower body and feet. ECF No. 1 at 1 [¶5]. A few days later, the numbness had extended upward to her hips, so she visited an urgent care center. *Id.* at 1-2 [¶¶5-6]; ECF No. 7-4 (urgent care records). The urgent care center doctor examined her and referred her to the Brooklyn Hospital Center emergency department for further evaluation. ECF No. 1 at 1-2 [¶¶5-6].

The Brooklyn Hospital admitted Ms. Stewart-Robinson for inpatient treatment on October 13. ECF No. 1 at 2 [¶6]; Exhibit 5 to the Complaint at 1 (Brooklyn Hospital records). The Brooklyn Hospital doctor noted that Ms. Stewart-Robinson had numbness and loss of sensation up to her waist and that Ms. Stewart-Robinson had received a flu vaccine two weeks before.

Exhibit 5 to the Complaint at 12-13. Before and during her hospital stay, Ms. Stewart-Robinson also experienced sweating and fevers. Exhibit 5 to the Complaint at 19; ECF No. 1 at 2 [¶6]. The numbness and weakness in her lower body grew, and she could not walk without a walker. ECF No. 1 at 2 [¶7]; *see* Exhibit 5 to the Complaint at 34. The hospital ran magnetic resonance imaging (an MRI) and a spinal tap before administering steroids and supplements. ECF No. 1 at 2 [¶7]; Exhibit 5 to the Complaint at 34. The MRI "showed segments of demyelination" but was not conclusive. Exhibit 5 to the Complaint at 33. At that time, a diagnosis of multiple sclerosis (MS) "was ruled out." ECF No. 9-3 at 3. The hospital discharged her about a week later. Exhibit 5 to the Complaint at 1, 32-35; ECF No. 1 at 2 [¶7].

A few days after her discharge, Ms. Stewart-Robinson had a follow-up appointment with Dr. Ma. ECF No. 1 at 2 [¶8]; ECF No. 9-1 at 25-26 (primary care physician records). Dr. Ma noted that Ms. Stewart-Robinson still needed assistance to walk and continued to experience neuropathy (numbness, weakness, and pain) in both legs. ECF No. 1 at 2 [¶8]; ECF No. 9-1 at 26. Dr. Ma added that a cerebrospinal fluid analysis test, conducted after Ms. Stewart-Robinson's hospital MRI, "was not consistent with MS." ECF No. 9-1 at 25. Dr. Ma advised her to continue taking supplements and to begin physical therapy. ECF No. 1 at 2 [¶8]; ECF No. 9-1 at 26.

Ms. Stewart-Robinson then had a neurological consultation with Dr. Adina Alport at the New York Presbyterian Brooklyn Methodist Hospital. ECF No. 1 at 2 [¶10]; ECF No. 9-3 at 3-8 (neurology consultation records). Dr. Alport reported that Ms. Stewart-Robinson's functionality had significantly declined. ECF No. 1 at 2 [¶10]; ECF No. 9-3 at 8. Dr. Alport gave Ms. Stewart-Robinson a working diagnosis of transverse myelitis (TM)—a demyelinating condition—but stated that neither MS nor neuromyelitis optica—which are also demyelinating conditions—could be ruled out. ECF No. 1 at 2 [¶10]; ECF No. 9-3 at 8. After additional testing, Dr. Alport formally

diagnosed Ms. Stewart-Robinson with a demyelinating disorder. ECF No. 9-3 at 15, 27; ECF No. 1 at 2 [¶11]. Ms. Stewart Robinson had further testing (ECF No. 1 at 2 [¶11]), which showed "[l]esions … due to transverse myelitis" or a "demyelinating disorder." ECF No. 9-4 at 5. About a month later, another physician, Dr. Laura Watson, confirmed Dr. Alport's findings and diagnosed Ms. Stewart Robinson with "[a]cute transverse myelitis in [a] demyelinating disease of the central nervous system." ECF No. 9-5 at 11, 31 (Brooklyn Methodist Hospital records); ECF No. 1 at 3 [¶12]. In another follow-up appointment, Dr. Ma recorded the neurologist's TM diagnosis and discussed with Ms. Stewart-Robinson the possible causes, explaining that it was still unclear whether infection, idiopathy, or vaccination had caused her condition. ECF No. 9-1 at 27-28.

In early January 2020, Ms. Stewart-Robinson had a follow-up appointment with Dr. Alport. ECF No. 1 at 3 [¶15]; ECF No. 9-3 at 29-34. Dr. Alport determined that Ms. Stewart-Robinson's latest test was "highly suggestive of MS." ECF No. 1 at 3 [¶15]; ECF No. 9-3 at 29, 33. Ms. Stewart-Robinson began seeing Dr. Alport regularly and received treatment to minimize her symptoms related to MS and TM. ECF No. 1 at 3 [¶¶15-18]; *see* ECF No. 9-3 at 35-69. About nine months later, Dr. Alport reported that although Ms. Stewart-Robinson had tingling, numbness, and itching symptoms, her gait instability was improving, and her MS was clinically stable. ECF No. 1 at 3 [¶18]; ECF No. 9-3 at 63-64, 68.

### B.    The procedural background of this case

On April 28, 2022, Ms. Stewart-Robinson filed a petition with the Office of Special Masters in the Court of Federal Claims. ECF No. 1. She alleged that she has both TM and MS, that the flu vaccine she received in September 2019 directly caused her TM and MS, and that the residual effects, complications, and symptoms she continues to experience will require medical care in the

future. ECF No. 1 at 3-4 [¶¶19-21]. Ms. Stewart-Robinson sought compensation for her medical injuries following her 2019 flu vaccination. *Id.* at 4 [¶¶20-23].

The special master assigned to the case held a status conference. *See* ECF No. 16 (order summarizing status conference); ECF No. 18 (transcript of status conference). The special master noted that, although Ms. Stewart-Robinson's doctor initially diagnosed her with TM, it appeared that "her initial, post-vaccination TM was the first presenting symptom of MS, rather than a single, independent event." ECF No. 16 at 1. "[W]here TM is followed by subsequent, recurring neuro-logic symptoms or other corroborating proof of a more chronic condition," he explained, "the claimant's actual injury is more than the initially-diagnosed TM." *Id.* at 2. Thus, he concluded, MS was "really the injury" that Ms. Stewart-Robinson alleged. ECF No. 18 at 7:3-4.

Relying on his prior experience with similar cases, the special master said that Ms. Stewart-Robinson's claim was unlikely to succeed because, although TM "injuries are often successfully established [under the Vaccine Act], and credibly so, [MS claims] are not with respect to the flu vaccine." ECF No. 16 at 1-2 (citing examples); *see* ECF No. 18 at 4:11-13 ("I have never found that MS is a vaccine injury and I'm highly skeptical of the theory."); *id.* at 6:18-7:16 (expressing his skepticism of Ms. Stewart-Robinson's claim but noting that his initial reaction was "only based on the petition, so [he] could be wrong"). The special master's initial impression was that Ms. Stewart-Robinson "faces an uphill effort in establishing that *any* vaccine might initiate a chroni-cally-aberrant immune process over a lengthy time period resulting in an MS diagnosis—even if she might under other circumstances prove that the flu vaccine could cause a single, monophasic and acute demyelinating injury like TM." ECF No. 16 at 2; ECF No. 18 at 4:11-13. Despite his skepticism, the special master noted that Ms. Stewart-Robinson's theory that she "got MS later, but the TM was vaccine-caused and it's unrelated" "might be possible, in some context" and that

it "isn't a completely untenable situation." ECF No. 18 at 4:14-20. He also agreed that it is very difficult to distinguish between TM and MS. *Id.* at 6:8-13.

Thus, the special master directed the parties to submit briefs addressing whether there was a specific and credible distinction between Ms. Stewart-Robinson's case and previous cases involving MS and the flu vaccine. ECF No. 18 at 4:23-5:8; ECF No. 16 at 2. The special master told Ms. Stewart-Robinson's counsel at the time that, in opposing the government's brief, Ms. Stewart-Robinson could refine her theory of causation, consult with an expert, and include a declaration summarizing a future full report. ECF No. 18 at 5:9-22. According to the special master, that declaration should articulate a causation theory and explain why the special master "should disregard other cases that involve [MS] as the injury." *Id.* at 5:16-19.

The government moved to dismiss Ms. Stewart-Robinson's petition for failing to present a prima facie case that the flu vaccine was the actual cause of either her TM or her MS diagnoses. ECF No. 21 (motion to dismiss under Rules of the Court of Federal Claims, Appendix B, Vaccine Rule 4(c) ("Vaccine Rule 4(c)")); ECF No. 20 at 16-18 (Vaccine Rule 4(c) report). The government argued that "a preponderance of the medical evidence of record establishes that the condition initially diagnosed as TM was a manifestation of petitioner's MS, not a separate diagnosis." ECF No. 20 at 16. Even if TM were a distinct diagnosis, according to the government, Ms. Stewart-Robinson "failed to provide a sound and reliable medical theory connecting" her diagnosis to the flu vaccine. *Id.* The government noted that none of Ms. Stewart-Robinson's medical providers "posited a link, except a temporal one, between the vaccine and her resultant condition" and that the record did not otherwise include evidence of causation. *Id.* at 17. The government mirrored the special master's skepticism that the flu vaccine could cause a chronic demyelinating condition like MS, as opposed to a temporary demyelinating condition like TM. *Id.* at 16-17.

After the government moved to dismiss, Ms. Stewart-Robinson's counsel withdrew from the case, and she proceeded without a lawyer. ECF Nos. 28, 29. Before Ms. Stewart-Robinson's response to the government's motion was due, the special master held another status conference. ECF No. 35. He reiterated that his "prior experience with this sort of claim suggests … that it is unlikely to succeed." *Id.* at 1. But, he told her, she could "try to defend her case." *Id.* To do that, he encouraged her to seek counsel and to "look carefully at the relevant documents to determine if she could provide credible support for her claim." *Id.* He also told her that she could look for an expert to provide a report for her case and that the vaccine program would reimburse her at the end of the case for the cost of the expert. *Id.*

Ms. Stewart-Robinson retained new counsel (ECF Nos. 36, 37), and the special master held a third status conference, which was not recorded (*see* docket entry from July 13, 2023). Ms. Stewart-Robinson alleges that, at that status conference, the special master told her that she "would not be allowed to get an expert" (ECF No. 40 at 2), and he "limit[ed] her presentation of her case to solely her medical records" (*id.* at 19). *See also* ECF No. 50 at 4:22-25, 17:10-18:4. According to Ms. Stewart-Robinson, at that status conference the special master also told her that "he would not pay an expert in this matter and that Counsel would need to file a brief outlining the theory of causation in response to the Motion to Dismiss." ECF No. 40 at 2. But, according to Ms. Stewart-Robinson, the special master said that "Counsel may file literature and that she may 'consult' with an expert in a limited capacity and that could be reimbursed." *Id.*; ECF No. 50 at 69:22-70:5, 71:3-23; *see also* ECF No. 50 at 46:17-24 (government's counsel agreeing that at the July status conference the special master told Ms. Stewart-Robinson's counsel that she could consult with an expert and file medical literature). Ms. Stewart-Robinson alleges that the special master agreed to pay for one hour of consultation with an expert. ECF No. 50 at 69:22-24.

After the status conference, Ms. Stewart-Robinson submitted two published scientific studies, as evidence of a link between flu vaccines and TM, in support of her causation theory. ECF Nos. 39-2, 39-3. She also responded to the government's motion to dismiss, arguing that she had established causation by a preponderance of the evidence. ECF No. 40 at 15-16. She further argued that the special master did not give her a full and fair opportunity to present her case by preventing her from providing expert testimony and by limiting her to her medical records and published studies. *Id.* at 16, 19, 22-23.

Ms. Stewart-Robinson also argued that the government had mischaracterized her general theory of causation. She alleged that "the vaccine was a substantial but-for factor in her development of TM and[,] based on the generally accepted science regarding TM/MS, her TM was a substantial but-for factor in the development of MS." ECF No. 40 at 16, 20. She argued that the special master should not conflate the two diagnoses but treat each one as distinct, even after MS was diagnosed. *Id.* at 16-18, 20. She argued that she did not need to "prove a separate theory of causation" that the flu vaccine caused MS. *Id.* at 18. According to Ms. Stewart-Robinson, the special master should treat TM as "a clinically isolated" or separate syndrome. *Id.* at 15-16. Because her TM diagnosis "remains clinically significant and may not be simply subsumed into her subsequent MS diagnosis," Ms. Stewart-Robinson argued that this case particularly warranted giving her an opportunity to present a full expert report in support of her causation theory. *Id.* at 18.

The special master granted the government's motion and dismissed Ms. Stewart-Robinson's case. ECF No. 41. The special master concluded that "TM does not accurately describe her overall injury, or even an injury apart from her later-diagnosed MS," and "it is not disputed that [she] was properly diagnosed with MS." *Id.* at 13, 17 (emphasis omitted). He stated that Ms. Stewart-Robinson's medical records supported her ultimate MS diagnosis but did not establish "an

association between [her] medical issues and her receipt of the flu vaccine," either through direct evidence or through the opinions of her medical providers. *Id*. at 6.

Procedurally, the special master dismissed Ms. Stewart-Robinson's claim "even before [she] … had the chance to offer expert support for her claim." ECF No. 41 at 16. He explained that expert "input would not alter the outcome." *Id.* According to the special master, based on his "expertise ruling on comparable claims in which a single, one-time demyelinating event did not capture the claimant's actual illness," he had already "heard live testimony on the question and/or reviewed lengthy expert reports" in other cases. *Id.* The special master explained that he "therefore [had] sufficient familiarity with the subject to expect that any evidence submitted herein would likely repeat prior arguments [he had] considered but rejected." *Id.* Without evidence that Ms. Stewart-Robinson ever had TM, and without evidence of a causal link between the vaccine and MS, the special master concluded that Ms. Stewart-Robinson had failed to establish a prima facie case. *Id.* at 17.

Ms. Stewart-Robinson seeks review of the special master's decision dismissing her case. ECF No. 42. She also requests that the court reassign the case to a different special master on remand. *Id.* at 19-20. The court held an oral argument on the motion for review.

## II.    Discussion

This court has jurisdiction to review a special master's decision under the Vaccine Act. 42 U.S.C. § 300aa-12(e). On a motion for review, this court may uphold or set aside the special master's findings of fact and conclusions of law or remand the petition to the special master for further action. 42 U.S.C. § 300aa-12(e)(2); *accord* Vaccine Rule 27.

This court reviews the decision of a special master to determine whether it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 42 U.S.C. § 300aa-

12(e)(2)(B); *Masias v. Secretary of Health and Human Services*, 634 F.3d 1283, 1287 (Fed. Cir. 2011); *accord* Vaccine Rule 27. That standard is "well understood to be the most deferential possible." *Munn v. Secretary of Health and Human Services*, 970 F.2d 863, 870 (Fed. Cir. 1992).

This court reviews the special master's findings of fact to determine whether they are arbitrary or capricious. *Hodges v. Secretary of Health and Human Services*, 9 F.3d 958, 961 (Fed. Cir. 1993). "If the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate." *Hines v. Secretary of Health and Human Services*, 940 F.2d 1518, 1528 (Fed. Cir. 1991). The court, like the Federal Circuit, does "not reweigh the factual evidence, assess whether the special master correctly evaluated the evidence, or examine the probative value of the evidence or the credibility of the witnesses—these are all matters within the purview of the fact finder." *Porter v. Secretary of Health and Human Services*, 663 F.3d 1242, 1249 (Fed. Cir. 2011); *see Munn*, 970 F.2d at 871-72 (explaining that the Federal Circuit and this court apply the same standard). This court reviews discretionary rulings, including case management decisions, for abuse of discretion. *Munn*, 970 F.2d at 870 n.10. That review "rarely come into play except where the special master excludes evidence." *Id.* The court gives "no deference to the … Special Master's determinations of law" and reviews legal questions de novo. *Carson v. Secretary of Health and Human Services*, 727 F.3d 1365, 1368 (Fed. Cir. 2013).

Ms. Stewart-Robinson bears the burden to prove, by a preponderance of the evidence, that the flu vaccine caused her to develop the medical conditions she alleges. 42 U.S.C. § 300aa-13(a)(1)(A); *id.* § 300aa-11(c)(1)(C); *see Porter*, 663 F.3d at 1249. To prove causation, she "must show that the vaccine was not only a but-for cause of the injury but also a substantial factor in bringing about the injury." *Moberly v. Secretary of Health and Human Services*, 592 F.3d 1315,

1321 (Fed. Cir. 2010) (quotation marks omitted). Ms. Stewart-Robinson must support her allegations of causation with "a sound and reliable medical or scientific explanation," but her explanation need only be "legally probable, not medically or scientifically certain." *Knudsen v. Secretary of Health and Human Services*, 35 F.3d 543, 548-49 (Fed. Cir. 1994). She can also prove causation from "the circumstances of the particular case" without "hard and fast *per se* scientific or medical rules." *Id.* Congress intended "close calls regarding causation [to be] resolved in favor of the injured claimants." *Althen v. Secretary of Health and Human Services*, 418 F.3d 1274, 1280 (Fed. Cir. 2005).

### A.   The special master abused his discretion by denying Ms. Stewart-Robinson the opportunity to file an expert report

Ms. Stewart-Robinson argues that the special master violated her procedural rights under the Vaccine Act and Vaccine Rules 3 and 8, and abused his discretion, when he dismissed her case without letting her submit an expert report. ECF No. 42 at 10-14, 18-19. She asserts that the special master improperly relied on his experience in previous cases to determine that any expert report, regardless of its content, would be inadequate to establish causation in her case. *Id.* She adds that the special master initially encouraged her to retain an expert but then denied her request to provide an expert report. *Id.* at 13. She also argues that the special master's reliance on facts developed in earlier cases amounts to an improper application of issue preclusion. *Id.* at 14-18. She argues that the special master therefore prematurely dismissed her case. *Id.* at 19.

The government responds that the special master acted within his discretion in managing the proceeding. ECF No. 47 at 10-15. The government reads the Vaccine Act, rules, and case law not to require a special master to accept expert reports, such that a special master may dismiss a case on the initial written record alone. *Id.* at 12-15. Special masters, the government argues, may rely on their expertise, including from previous cases, to inform their decisionmaking. *Id.*

Special masters have broad discretion to manage and administer Vaccine Act cases. *Burns v. Secretary of Health and Human Services*, 3 F.3d 415, 417 (Fed. Cir. 1993); Vaccine Rule 3(b)(1). A special master must "endeavor[] to make the proceedings expeditious, flexible, and less adversarial, while at the same time affording each party a full and fair opportunity to present its case and creating a record sufficient to allow review of the special master's decision." Vaccine Rule 3(b)(2); *see* 42 U.S.C. § 300aa-12(d)(2)(D) (requiring the vaccine rules to "include the opportunity for parties to submit arguments and evidence on the record without requiring routine use of oral presentations, cross examinations, or hearings"). The rules further direct the special master to "determine the format for taking evidence and hearing argument based on the specific circumstances of each case and after consultation with the parties." Vaccine Rule 8(a).

But special masters' discretion to administer Vaccine Act proceedings is not unlimited. *Kreizenbeck v. Secretary of Health and Human Services*, 945 F.3d 1362, 1366 (Fed. Cir. 2020). Special masters may not conduct proceedings "in a way that deprives a party of procedural rights provided by the Vaccine Act and the Vaccine Rules." *Simanski v. Secretary of Health and Human Services*, 671 F.3d 1368, 1385 (Fed. Cir. 2012). Special masters "shall afford all interested persons an opportunity to submit relevant written information." 42 U.S.C. § 300aa-12(d)(3)(B)(iv); *see Burns v. Secretary of Health and Human Services*, No. 90-953, 1992 WL 365410, at *2 (Fed. Cl. Spec. Mstr. Nov. 6, 1992), *aff'd*, 3 F.3d 415 (Fed. Cir. 1993) (special master had a duty to consider a medical expert report but had discretion to determine whether to supplement the record with additional affidavits). "The special master or court may not [award compensation] based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). Thus, special masters are required to "consider all relevant and reliable evidence" in the record, draw plausible inferences, and articulate a rational basis for their decisions.

Vaccine Rule 8(b)(1); *Hines*, 940 F.2d at 1528; *see also Burns*, 1992 WL 365410, at *2. When receiving evidence, the special master is "governed by principles of fundamental fairness to both parties." Vaccine Rule (8)(b)(1). A special master may not rule on the record until he has determined that "the record is comprehensive and fully developed." *Kreizenbeck*, 945 F.3d at 1366.

The special master abused his discretion in denying Ms. Stewart-Robinson an opportunity to file an expert report in this case. The government is correct that special masters may draw on and even substantially rely on their expertise and case law to resolve Vaccine Act cases. *Doe v. Secretary of Health and Human Services*, 76 Fed. Cl. 328, 338-39 (2007) ("One reason that proceedings are more expeditious in the hands of special masters is that the special masters have the expertise and experience to know the type of information that is most probative of a claim."); *Munn*, 970 F.2d at 868-71. Special masters would "be remiss in ignoring prior cases presenting similar theories or factual circumstances, along with the reasoning employed in reaching such decisions." *Simeone v. Secretary of Health and Human Services*, No. 20-1375, 2023 WL 5286292, at *7 n.7 (Fed. Cl. Spec. Mstr. Feb. 24, 2023), *review denied, decision aff'd*, 167 Fed. Cl. 389 (2023).

But special masters may not rely *exclusively* on the facts found in other similar vaccine cases to determine causation or make any ultimate determinations in a new case. *Contreras v. Secretary of Health and Human Services*, 107 Fed. Cl. 280, 308 (2012). A special master's decision must also account for the record in the pending case. *E.g.*, *Kalajdzic v. Secretary of Health and Human Services*, No. 23-1321, 2024 WL 3064398, at *3 (Fed. Cir. June 20, 2024) (holding that the special master did not place undue weight on a previous decision because he analyzed and rejected expert testimony on case-specific grounds); *O.M.V. v. Secretary of Health and Human Services*, 157 Fed. Cl. 376, 388 (2021) (finding no error when the special master relied on

13

experience and case law in conjunction with medical literature and expert testimony to ultimately deny the petitioner's claim).

That is because each Vaccine Act case is unique and must be evaluated on its own merits. *Contreras*, 107 Fed. Cl. at 308; *Campbell v. Secretary of Health and Human Services*, 69 Fed. Cl. 775, 784 (2006). Causation in fact is "based on the circumstances of the particular case, having no hard and fast *per se* scientific or medical rules" because causation "under the Vaccine Act involves ascertaining whether a sequence of cause and effect is 'logical' and legally probable, not medically or scientifically certain." *Knudsen*, 35 F.3d at 548-49. Furthermore, special masters are not bound by their own earlier decisions. *Hanlon v. Secretary of Health and Human Services*, 40 Fed. Cl. 625, 630 (1998), *aff'd*, 191 F.3d 1344 (Fed. Cir. 1999). Thus, the special master's "acceptance of a theory in one case does not require him or her to accept the theory in subsequent cases involving similar facts or the same vaccine." *Rickett v. Secretary of Health and Human Services*, 468 Fed. App'x 952, 959 (Fed. Cir. 2011). A "different evidentiary record can lead to different outcomes. To decide otherwise would effectively require special masters to ignore the impact of ever-changing technological advances and medical breakthroughs that might discredit the plausibility of a formerly accepted theory." *Id.* (citations omitted).

Notably, in *Moberly*, 592 F.3d at 1325, expert reports distinguished two very similar cases that concerned the same injury and theory of causation. The special master in *Moberly* found that the petitioner's expert lacked credibility and was unpersuaded by the expert's theory of causation, whereas in the previous case the special master had relied on an expert report presenting the same theory. *Id.* Although the two expert reports conflicted, the Federal Circuit held that the special master did not need to resolve the conflict to decide causation. *Id.* Because "the legal standard is a preponderance of the evidence, not scientific certainty," the special master had to decide whether

expert testimony was credible, reliable, and persuasive, not whether it was scientifically sound. *Id.* The Federal Circuit concluded that because of the experts, the records in the two cases were significantly different, so the result in the previous case did "not compel the same result" there. *Id.*

Here, the special master impermissibly allowed his expertise and experience with similar cases to control the outcome of this case without considering a full record. ECF No. 41 at 12-17. Relying on other cases and Ms. Stewart-Robinson's medical records, he concluded that Ms. Stewart-Robinson's earlier documented TM diagnosis was not a clinically isolated syndrome or a congruent illness, but only the "initial presenting symptom of MS." *Id.* at 14-15 (emphasis omitted). Therefore, he concluded that she "experienced MS—not a single, self-limiting occurrence of TM"—and that "TM was the presenting component of a greater condition"; she did not have "an isolated 'case' of TM." *Id.* at 15 (emphasis omitted). That was "despite evidence supporting the diagnosis at first glance." *Id.* Because Ms. Stewart-Robinson did "not seek to prove her MS was vaccine-caused (except as a secondary matter at most)," he concluded that "she cannot prevail." *Id.* at 16. The special master also concluded that the flu vaccine could not have caused MS. *Id.* at 16 n.13 ("I would, however, still dismiss the claim even if [Ms. Stewart-Robinson] had advanced the alternative theory that her MS was vaccine-caused, relying on the reasoning from prior cases.").

Those conclusions were premature. By dismissing the case without allowing Ms. Stewart-Robinson to present expert evidence rebutting his conclusions, the special master precluded Ms. Stewart-Robinson from developing the full record that he is required to consider (Vaccine Rule 8(b)(1)) and impeded her from fully presenting her case (Vaccine Rule 3(b)(2)). In stating that no viable expert report would support Ms. Stewart-Robinson's theory, the special master presumed what any expert report might say and, in the process, determined the case's overall merits. ECF No. 41 at 16 & n.13. But ruling on the merits of a case at the motion-to-dismiss stage is premature.

*See Simanski*, 671 F.3d at 1380, 1382-85 (remanding because the special master had prematurely ruled on the merits at "an early procedural stage," and noting that when the government believes the petitioner's evidence is insufficient to justify compensation under the Vaccine Act, "the proper course is for the [government] to move for summary judgment").[2]

Refusing to allow an expert report was particularly detrimental here because "expert medical testimony is often very important" for demonstrating "proof of actual causation," *Broekelschen v. Secretary of Health and Human Services*, 618 F.3d 1339, 1347 (Fed. Cir. 2010), and can be dispositive, *Moberly*, 592 F.3d at 1325. Further, the special master told Ms. Stewart-Robinson that she would have an opportunity to provide expert testimony (ECF No. 35 at 1) and later said that he was "unlikely to revisit [his] prior determinations on the subject" unless she presented "some critical or new item of evidence" such as new scientific studies "that would support the conclusion that an initial, vaccine-caused MS flare, first manifesting as TM, in turn is likely [causal] of MS writ large" (ECF No. 41 at 16 (emphasis omitted)).

Although the special master considered Ms. Stewart-Robinson's medical records when concluding that Ms. Stewart-Robinson did not separately have TM (ECF No. 41 at 15), he did not address Ms. Stewart-Robinson's specific theory of causation (*id.* at 12-17). Instead, he explained that, in his experience, no case or medical study has yet established that the flu vaccine could cause

---

[2] Ms. Stewart-Robinson argues that the special master ordered the government to file a motion to dismiss, compounding her concern that the decision was premature because it was not even the government's idea. ECF No. 42 at 11-12. While it appears to be rare that a special master might order such a motion, as opposed to issuing a show-cause order (*see, e.g.*, *Bello v. Secretary of Health and Human Services*, No. 20-739, 2021 WL 5070179, at *1 (Fed. Cl. Spec. Mstr. Sept. 10, 2021)), the special master has wide discretion in choosing how to conduct proceedings (*Burns*, 3 F.3d at 417; Vaccine Rule 3(b)). And, on a review of the transcript and order, it does not appear that the special master ordered the government to file the motion, as opposed to simply discussing the timing of a possible motion to dismiss. ECF No. 18 at 4:23-5:8; ECF No. 16 at 2.

MS or that TM could lead to MS. *Id.* at 15 ("I have never found entitlement in a case where a Petitioner's initial presenting illness may have *appeared* to be an acute event (like TM …), but later turned out to be the first manifestation of MS."); *id.* at 16 n.14 ("[T]o my knowledge, [there are] *no comparable studies whatsoever* linking the flu virus to MS in the same manner."). Because the special master has "sufficient familiarity with the subject," he reasoned that he could "expect that any evidence submitted herein would likely repeat prior arguments [he had] considered but rejected" and thus that it would be impossible for any expert to present a credible report to the contrary. *Id.* at 16 ("[E]xpert support for her claim … would not alter the outcome."). But contrary to the special master's conclusion, as he noted, Vaccine Act cases do not unanimously reject Ms. Stewart-Robinson's theory. *Id.* at 15 n.12 ("Admittedly, a few special masters have gone in the opposite direction, and granted compensation in MS cases—finding either direct causality or aggravation of preexisting, if subclinical, MS."); *see Hitt v. Secretary of Health and Human Services*, No. 15-1283, 2020 WL 831822, at *9-11 (Fed. Cl. Spec. Mstr. Jan. 24, 2020).

To support the conclusion that the flu vaccine cannot cause MS, the special master explained that he was "confronted with a causation theory that [he has] evaluated repeatedly before, in matters where [he] was required to exhaustively review medical and scientific evidence on questions of causation." ECF No. 41 at 16. According to the special master, "[t]here is no call for repeating this exercise solely because the claimant is different." *Id.* But the provisions of the Vaccine Act require more. *See Moberly*, 592 F.3d at 1325.

The special master relied on his knowledge of the medical literature, not to evaluate the persuasiveness of the record, but to preclude Ms. Stewart-Robinson from fully developing it. As the special master stated, "here, a medical expert could not gainsay the medical / scientific fact that TM and MS are distinguishable—and that TM can constitute an initial MS presenting

symptoms." ECF No. 41 at 16 (emphasis omitted). He also dismissed the alternative theory that the flu vaccine could cause MS because he was not aware of any medical study supporting it. *Id.* at 16 n.14 ("[T]o my knowledge, [there are] no comparable studies whatsoever linking the flu virus to MS in the same manner." (emphasis omitted)). But the special master also acknowledged that "it is not well-understood what causes MS in the first place—with far more evidence linking vaccines to acute, self-limiting illnesses (like TM) than to MS." *Id.* at 13. Ms. Stewart-Robinson's theory of causation does not need to be medically or scientifically certain, only legally probable. *Knudsen*, 35 F.3d at 548-49. Thus, an expert report could conceivably meet that standard in this case.

A special master may rely on an earlier case to reject an expert report for lack of credibility, but that decision must be based on "case-specific reliability grounds." *Kalajdzic*, 2024 WL 3064398, at *3; *see also Whitecotton v. Secretary of Health and Human Services*, 81 F.3d 1099, 1108 (Fed. Cir. 1996) (explaining that special masters "have very wide discretion with respect to the evidence they would consider and the weight to be assigned that evidence," but in evaluating weight the special master must consider the entire record). In *Kalajdzic*, 2024 WL 3064398, at *3, the petitioner had an opportunity to file an expert report. In this case, the special master did not allow an expert report explaining Ms. Stewart-Robinson's theory.

In *Bello v. Secretary of Health and Human Services*, 158 Fed. Cl. 734, 743-44, 748-49 (2022), which the government relies on (ECF No. 47 at 12-15), this court held that a special master did not abuse his discretion by refusing a petitioner's requests for an evidentiary hearing and additional time to submit an expert report. But in *Bello*, the special master "gave Petitioners a full and fair opportunity to present written evidence and argument" by granting them more than one opportunity to clarify the written record beyond their initial submissions of medical records,

including "a chance to address the difficulties that are commonly presented when claimants attempt to prove that vaccines have caused" injuries. 158 Fed. Cl. at 748. As in this case, the special master in *Bello* warned that claims like the one alleged are often unsuccessful. *Id.* But because of that, the special master in *Bello* "invited Petitioners to identify medical evidence" to distinguish and attempt to prove their claim. *Id.* The petitioners in *Bello* "had the opportunity" to clarify and complete the record but chose not to take advantage of that opportunity. *Id.* at 748-49 (In response to the special master's order to show cause, the petitioners "took precisely the approach the [special master] warned them against."). In comparison, the special master here did not give Ms. Stewart-Robinson an opportunity to clarify the record. After the special master gave her time to retain new counsel and recommended that she retain an expert to help her argue a difficult case (ECF No. 35 at 1), the special master then dismissed the case before giving her the chance to submit an expert report (ECF No. 41 at 16-17).

The government also raises the court's recent decision in *Felix v. Secretary of Health and Human Services*, No. 21-1728, 2024 WL 3807273 (Fed. Cl. Aug. 14, 2024). ECF No. 48. There, the court held that a special master did not abuse his discretion when he rejected the petitioners' request to submit expert reports. *Felix*, 2024 WL 3807273, at *4. The government argues that the special master here likewise gave Ms. Stewart-Robinson a full opportunity to present her case, even without expert testimony, before dismissing the case. ECF No. 48 at 2-3.

But *Felix* was a "table injury" case, whereas this case is an "off-table injury" case. *Compare* 2024 WL 3807273, at *1 *with* ECF No. 42 at 6. As the special master in *Felix* noted, "experts are not routine in [table injury] cases." *Felix v. Secretary of Health and Human Services*, No. 21-1728, 2024 WL 2831368, at *1 n.3 (Fed. Cl. Spec. Mstr. Apr. 29, 2024); *Guilliams v. Secretary of Health and Human Services*, No. 11-716, 2012 WL 1145003, at *10 n.20 (Fed. Cl. Spec. Mstr. Mar. 14,

2012). In table injury cases, as long as the claims are "within the timetable and specifications of a Table injury … the statute does the heavy lifting—causation is conclusively presumed." *Hodges*, 9 F.3d at 961.

"By comparison, in off-Table injury cases, it is the preponderance standard, as opposed to operation of law, that does the 'heavy lifting' of establishing causation." *Althen*, 418 F.3d at 1280 (quoting *Hodges*, 9 F.3d at 961). And the Vaccine Act requires different and more extensive evidence to show entitlement for off-table injuries. *Compare* 42 U.S.C. § 300aa-11(c)(1)(A), (B)(i) *with* § 300aa-11(c)(1)(C). Thus, expert reports are more common and are often essential to establishing causation in off-table injury cases. *Broekelschen*, 618 F.3d at 1347; *Lampe v. Secretary of Health and Human Services*, 219 F.3d 1357, 1361 (Fed. Cir. 2000) ("As is often true in Vaccine Act cases based on a theory of actual causation, the expert medical testimony was important in this case.").

Relatedly, the motion to dismiss in *Felix* concerned whether the plaintiff had satisfied the severity requirement (42 U.S.C. § 300aa-11(c)(1)(D)), while here the motion to dismiss concerns causation (*id.* § 300aa-12(d)(3)(B)(iv)). It is harder to prove causation. In *Felix*, the court explained that witness statements noting that the injury had persisted for six months would have sufficed to establish severity. *See* 2024 WL 2831368, at *1 & n.3. Unlike the severity provision, the Vaccine Act's causation provision requires the special master to "afford all interested persons an opportunity to submit relevant written information … relating to any allegation in a petition [that the petitioner sustained, or had significantly aggravated, any off-table illness, disability, injury, or condition but which was caused by a vaccine on the Vaccine Injury Table]." 42 U.S.C. § 300aa-12(d)(3)(B)(iv)(II)  (incorporating  § 300aa-11(c)(1)(C)(ii));  *see generally* 42  U.S.C.  § 300aa-12(d)(3)(B). Thus, although in *Felix* the special master had "satisfied the … procedural and

substantive requirements" without accepting an expert report (2024 WL 3807273, at *3-4), different procedural requirements apply to establish causation.

The government analogizes the special master's authority to prohibit an expert report in this case to special masters' discretion over whether to hold evidentiary hearings. ECF No. 47 at 7, 12. Although expert reports, like evidence adduced in a hearing, are all evidence, the rules and case law treat them differently. Vaccine Rule 8(d) states that a "special master may decide a case on the basis of written submissions without conducting an evidentiary hearing." *See also* 42 U.S.C. § 300aa-12(d)(3)(B)(v); *Oliver v. Secretary of Health and Human Services*, 900 F.3d 1357, 1364 n.6 (Fed. Cir 2018); *Burns*, 3 F.3d at 417. In contrast, the Vaccine Act states that special masters, "[i]n conducting a proceeding on a petition … shall afford all interested persons an opportunity to submit relevant written information." 42 U.S.C. § 300aa-12(d)(3)(B)(iv).

And before deciding to skip an evidentiary hearing, special masters must first determine that they have considered all the relevant evidence in the case. *Kreizenbeck*, 945 F.3d at 1366 ("[S]pecial masters must determine that the record is comprehensive and fully developed before ruling on the record."); *Vinesar v. Secretary of Health and Human Services*, No. 18-440, 2023 WL 5427935, at *47-48 (Fed. Cl. July 28, 2023), *review denied on other grounds, decision aff'd*, 170 Fed. Cl. 681 (2024) (Federal Circuit appeal on other grounds pending). In *Vinesar*, the special master explained, in deciding not to hold an evidentiary hearing, that the petitioners "had ample opportunity to submit evidence supporting their position" and that, "from the [petitioners'] perspective, they do not need any additional evidence." *Vinesar*, 2023 WL 5427935, at *48.

Unlike Vaccine Rule 8(d), there is no equivalent provision under the Vaccine Act or in the rules permitting the special master to prevent a party from filing a relevant written expert report. Although there is not much authority directly addressing how to decide a case without an expert

report, the Federal Circuit has implied that, under the plain language of the Vaccine Act and Vaccine Rules, special masters have more discretion to skip a hearing than to prohibit expert reports. *D'Tiole v. Secretary of Health and Human Services*, 726 Fed. App'x 809, 812 (Fed. Cir. 2018) (affirming the special master's discretion to accept and consider seven expert reports but decide the case without an evidentiary hearing).

This court does not reweigh factual evidence or review the special master's evaluation of that evidence. *Porter*, 663 F.3d at 1249. The problem here is that the special master did not allow the evidence—an expert report—to be submitted in the first place. And while a special master has wide discretion in case management decisions, a decision to exclude evidence can amount to an abuse of discretion. *Munn*, 970 F.2d at 870 n.10. This court and the Federal Circuit are "willing[] to reverse the decision of a special master when the special master has failed to adequately develop the record, failed to consider facts critical to the case, failed to give adequate consideration to a viable medical theory, or otherwise misapplied the law." *Snyder v. Secretary of Health and Human Services*, 88 Fed. Cl. 706, 718 (2009); *see Tebcherani v. Secretary of Health and Human Services*, 55 Fed. Cl. 460, 477-479 (2003); *Dickerson v. Secretary of Health and Human Services*, 35 Fed. Cl. 593, 601-602 (1996).

Notably, the rules do not require an extensive review of the evidence, and special masters are of course permitted and encouraged to rely on their expertise in adjudicating Vaccine Act cases. At the motion-to-dismiss stage, the special master is allowed to dismiss an implausible theory. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *W.J. v. Secretary of Health and Human Services*, 93 F.4th 1228, 1243 (Fed. Cir. 2024) ("[S]pecial masters have jurisdiction to rule on motions to dismiss."), *petition for certiorari docketed*.

But here the special master acknowledged that Ms. Stewart-Robinson's theory that she had both TM and MS "might be possible, in some context," that it "isn't a completely untenable situation," and that the special master was not "dealing with … something that's well beyond the pale." ECF No. 18 at 4:14-22. In at least one other case, a special master has accepted Ms. Stewart-Robinson's theory, that the flu vaccine caused the petitioner's MS that initially presented as TM. *Hitt*, 2020 WL 831822, at *9-11; *see* ECF No. 41 at 15 n.12 (acknowledging that other special masters have granted compensation in MS cases).

Here, Ms. Stewart-Robinson should have the chance to submit an expert report. *See Kreizenbeck*, 945 F.3d at 1366 (A special master may not rule on the record until he has determined that "the record is comprehensive and fully developed."). The special master abused his discretion when he dismissed Ms. Stewart-Robinson's case on an incomplete record.

Nothing in this opinion should be read to preclude the special master from coming to the same conclusion in this case after looking at all the evidence. And, indeed, nothing in this opinion precludes the special master from excluding an expert's opinion as lacking credibility or scientific support under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See Terran v. Secretary of Health and Human Services*, 195 F.3d 1302, 1316 (Fed. Cir. 1999) (explaining that a special master may apply the *Daubert* framework in Vaccine Act cases to evaluate expert testimony). The special master could also limit the reimbursement of expert fees and costs if he deems the basis for hiring an expert unreasonable. *See* 42 U.S.C. § 300aa-15(e)(1) (permitting the special master to award "reasonable attorneys' fees, and other costs, incurred" throughout the proceeding as long as "the petition was brought in good faith and there was a reasonable basis for the claim."); ECF No. 50 at 24:23-25:13 (Ms. Stewart-Robinson's counsel explaining that when a petitioner relies on a theory that lacks a reasonable basis, special masters typically inform the petitioner that

the court will not pay for the expert but do not prohibit expert reports). The special master need only allow Ms. Stewart-Robinson to present her evidence and address that evidence in making a decision.[3]

**B.      The court remands the case to the original special master**

On remand, this court ordinarily reassigns vaccine cases to the originally assigned special master. *Contreras v. Secretary of Health and Human Services*, 844 F.3d 1363, 1369 (Fed. Cir. 2017); *see Liteky v. United States*, 510 U.S. 540, 551 (1994) ("It has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant."). Reassignment is limited to when it is necessary "to preserve the appearance of fairness." *See Alta Wind I Owner Lessor C v. United States*, 897 F.3d 1365, 1382 (Fed. Cir. 2018). This court and the Federal Circuit reassign cases only when "the circumstances … are such that upon remand [the adjudicator] cannot reasonably be expected to erase the earlier impressions from his or her mind" or "where [an adjudicator] has repeatedly adhered to an erroneous view after the error is called to his attention." *Contreras*, 844 F.3d at 1369 (marks omitted). Adjudicators are presumed to be impartial. *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 820 (1986).

Ms. Stewart-Robinson argues that the special master's comments—such as his being "unlikely to revisit [his] prior determinations on the subject absent some critical or new item of evidence that justifies reconsideration" (ECF No. 41 at 16)—"strongly imply that no evidence will change his mind" (ECF No. 42 at 19 (emphasis omitted)). But special masters are not precluded from relying on their experience and expertise in deciding a case. *See Doe*, 76 Fed. Cl. at 338-39. "[O]pinions held by judges as a result of what they learned in earlier proceedings" do not constitute

---

[3] Because the special master abused his discretion, the court need not address Ms. Stewart-Robinson's issue preclusion argument (ECF No. 42 at 14-18).

bias or prejudice. *Liteky*, 510 U.S. at 551. It is okay—and even helpful—for a special master to preview for the parties that he is skeptical of certain parts of the case. That allows the parties to address those concerns in future briefing and arguments.

Unlike cases where reassignment was justified, the special master here has not failed to follow any prior instructions (as in *Contreras*, 844 F.3d at 1369), shown any evidence of bias against this particular petitioner (as in *Richardson v. Secretary of Health and Human Services*, 89 Fed. Cl. 657, 660 (2009)), or inconsistently interpreted the evidence in this case (as in *Doles v. Secretary of Health and Human Services*, 163 Fed. Cl. 616, 618 (2023)). Instead, the problem here was a reluctance to examine the evidence in the first place. The court is confident that the special master will examine the evidence and impartially adjudicate Ms. Stewart-Robinson's claim on remand.

Ms. Stewart-Robinson has not overcome the presumption of impartiality afforded to the special master in this case.

### III.    Conclusion

For the reasons stated above, this court **grants** Ms. Stewart-Robinson's motion for review and **sets aside** the special master's decision dismissing the case. The court **remands** the case to the special master under Vaccine Rule 27(c).


**IT IS SO ORDERED.**


 s/ Molly R. Silfen
MOLLY R. SILFEN
Judge